**Diane F. LEIBEL, Plaintiff,**

v.

**NCL (BAHAMAS) LTD. d/b/a Norwegian Cruise Line and/or NCL America LLC, Defendant.**

Case No.: 1:15–cv–20721– Lenard/Goodman

United States District Court, S.D. Florida.

Signed May 6, 2016

Louise R. Caro, Napoli Shkolnik, PLLC, Coconut Grove, FL, for Plaintiff.

Jeffrey Eric Foreman, Andrew Douglas Craven, Catherine J. Macivor, Daniela Ferro Janna, Foreman Friedman, P.A., Miami, FL, for Defendant.

*OMNIBUS ORDER DENYING AS MOOT DEFENDANT'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR. WILKERSON (D.E.93); AND DENYING PLAINTIFF'S MOTION TO SUBSTITUTE EXPERT WITNESS (D.E.113)*

JOAN A. LENARD, UNITED STATES DISTRICT JUDGE

**THIS CAUSE** is before the Court upon Defendant's Motion to Exclude the Expert Testimony of Dr. John Wilkerson (D.E.93), filed on April 1, 2016; and Plaintiff's Motion to Substitute (D.E.113) another medical expert for Dr. Wilkerson, filed on April 7, 2015. Plaintiff did not respond to Defendant's Motion to Exclude Dr. Wilkerson, but instead informed the Court that Dr. Wilkerson had withdrawn as her expert. (D.E.113.) Defendant filed its Response in Opposition to Plaintiff's Motion to Substitute (D.E.148) on April 19, 2016; and Plaintiff replied on April 29, 2016, (D.E.153). Upon review of Defendant's Motion to Exclude, Plaintiff's Motion to Substitute, the parties' briefing, and the record, the Court finds as follows.

**I. Background**

On April 1, 2016, Defendant filed its Motion to Exclude the Testimony of Dr. John Wilkerson, arguing that his opinions were not the product of an acceptable method; and therefore, were unreliable. Shortly thereafter, Plaintiff filed her Motion to Substitute another medical expert for Dr. John Wilkerson. (D.E.113.) Plaintiff asserts that Dr. Wilkerson quit without explanation. (*Id.*) She contends

that good cause exists pursuant to Rule 16 to permit substitution because her expert's decision not to testify was beyond her control. (D.E. 153 at 4–5.)

The Defendant, on the other hand, presents a very different picture. It contends that Dr. Wilkerson quit following his deposition after realizing he had not been provided with sufficient information[1] to form a medical opinion.[2] During Dr. Wilkerson's deposition he stated multiple times that he had not known the Plaintiff wished him to serve as an expert witness. (*See, e.g.,* D.E. 148–1 at 11: 6–11.) Dr. Wilkerson ultimately admitted that he could not provide a medical opinion as to the cause of Plaintiff's injury, the current state of her health or her future medical needs.[3] (*Id.* at 65–67.) Based on Dr. Wilkerson's admission that he could not render a reliable medical opinion using only the information he had been provided, Defendant moved to exclude him as an expert.

## II. Analysis

This case presents an unusual quandary. Because Dr. Wilkerson refuses to testify, Defendant's Motion to exclude his testimony is moot and must be denied as such. However, the Court cannot ignore the fact that Dr. Wilkerson was Plaintiff's only designated medical expert, Defendant was required to expend resources deposing Dr. Wilkerson and preparing its *Daubert* motion, and that Dr. Wilkerson would almost certainly have been excluded as an expert had he not withdrawn. Keeping all of this in mind, the Court must decide whether substitution is appropriate at this late stage.

█ There is little published law on the question of what standard governs substitution of expert witnesses. Some courts utilize Rule 16's standard for modifying a scheduling order, while others look to Rule 37. *See Fid. Nat. Fin., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa,* 308 F.R.D. 649, 652 (S.D.Cal.2015) (discussing cases). However, as the Court in *Fidelity* recognized, the practical difference between the two standards is negligible. *(Id.)* (noting that Rule 16 utilizes the "good cause" standard and Rule 37 uses the "substantial justification" standard—both of which look to similar factors). Accordingly, the Court will follow the majority of district courts to address this issue and apply Rule 16's good cause standard. *See, e.g., Doctor's Assocs., Inc. v. QIP Holder, LLC,* No. 3:06–cv–1710, 2009 WL 5184404, at *4 (D.Conn. Dec.23, 2009) ("In determining whether to allow a substitute expert, courts have frequently relied on Federal Rule of Civil Procedure 16(b), and

---

1. Plaintiff declined to permit Dr. Wilkerson to examine her in person. (D.E. 148–1 at 27: 2–7.) Plaintiff also only provided select medical records to Dr. Wilkerson which did not include any radiological films and only a limited medical history. (*Id.* at 14: 1–14.) In fact, Dr. Wilkerson admitted that is initial opinion was based solely upon the review of fifty-eight (58) pages of medical records. (*Id.* at 9: 7–15.)

2. In a federal admiralty action, state law standards for the admissibility of medical experts are inapplicable; instead, the Federal Rules of Evidence, as interpreted by *Daubert* and its progeny, govern. *See Stewart–Patterson v. Celebrity Cruises, Inc.,* No. 12–20902–CIV, 2012 WL 5868397, at *9, n. 7 (S.D.Fla. Nov. 19, 2012). Therefore, the appropriate inquiry is whether "the expert is qualified to testify competently, that his methods are sufficiently reliable, and that the expert testimony would assist the trier of fact." *Id.*

3. Dr. Wilkerson's deposition contains the following exchange:

   **Defense Counsel:** So Doctor, is it fair to say that if you can't opine as to causation in this case and you can't opine as to Ms. Leibel's need for future medical care that you actually don't have any opinions to render or give in this case?
   **Dr. Wilkerson:** Yes.
   (D.E. 148–1 at 66–67.)

treated the request for a substitute expert as a de facto attempt to alter the scheduling order and enlarge the discovery period.").

"A party seeking the extension of an already-expired scheduling order deadline must show both good cause and excusable neglect." *Payne v. C.R. Bard, Inc.*, 606 Fed.Appx. 940, 943–44 (11th Cir.2015) (emphasis in original) (citing Fed.R.Civ.P. 6(b)(1) and 16(b)(4)). Rule 16's "good cause" standard "precludes modification [of the scheduling order] unless the schedule cannot be met despite the diligence of the party seeking the extension." *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1232 (11th Cir.2008) (quoting *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1418 (11th Cir.1998)); *see also Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir.2002) ("The primary measure of Rule 16's 'good' cause standard is the moving party's diligence in attempting to meet the case management order's requirements.... Another relevant consideration is possible prejudice to the party opposing the modification."); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992) ("If [a] party was not diligent, the [good cause] inquiry should end."). When determining whether excusable neglect exists, courts should consider "all pertinent circumstances, including the danger of prejudice to the non-movant, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Harris Corp. v. Ruckus Wireless, Inc.*, No. 6:11–CV–618–ORL–41, 2015 WL 3883948, at *6 (M.D.Fla. June 24, 2015) (*Payne*, 606 Fed.Appx. at 943–44).

In this case, the deadline to designate expert witnesses and furnish reports was November 16, 2015; the deadline to complete expert discovery was February 1, 2016; and the deadline to file dispositive motions was April 1, 2016. (D.E.23.) Plaintiff did not move to substitute her expert witness until April 11, 2016. (D.E. 113.) Therefore, her request to substitute an expert witness came five months after the deadline to designate experts; two months after expert discovery was complete; and one week after dispositive motions were due. Plaintiff argues that she was diligent because her expert only recently quit and that his reasons for doing so were outside of her control. However, this representation vastly oversimplifies the facts and procedural posture of this case.

Courts have consistently allowed the substitution of expert witnesses when unexpected events prevent the designated expert from testifying at trial. *See, e.g., Doctor's Assocs., Inc.*, 2009 U.S. Dist. LEXIS 119949 at *10–11 (finding good cause to substitute where original expert withdrew due to a conflict of interest); *Howard v. Securitas Sec. Servs., USA, Inc.*, Case No. 08–2746 (N.D.Ill. June 23, 2011) (finding substantial justification to substitute party's expert after the disclosure deadline where original expert witness was recovering from leukemia); *Lincoln Nat'l Life Ins. Co. v. Transamerica Fin. Life Ins. Co.*, Case No. 04–396, 2010 U.S. Dist. LEXIS 103744, 2010 WL 3892860 (N.D.Ind. Sept. 30, 2010) (finding good cause to substitute expert witness where original expert was arrested for embezzlement and unavailable to testify because he was incarcerated); *Jung v. Neschis*, No. 01 Civ. 6993, 2007 WL 5256966, at *4, *16–17 (S.D.N.Y. Oct. 23, 2007) (finding good cause to extend expert discovery deadline where party sought to introduce substitute expert because original expert developed Alzheimer's disease during course of litigation).

However, courts have been equally consistent in denying motions to substitute an

expert witness when the reason for the substitution was foreseeable and resulted from the parties' lack of diligence. *See, e.g., Crandall v. Hartford Cas. Ins. Co.,* No. CV 10–00127–REB, 2012 WL 6086598, at *3 (D.Idaho Dec. 6, 2012) (denying motion to substitute expert witness when the impetus for the motion was plaintiff's fear that the current expert's opinions would not withstand summary judgment); *Smith v. Reynolds Transp. Co.,* No. 3:11–CV–2728–CMC, 2013 WL 247714, at *2 (D.S.C. Jan. 23, 2013) (when a party learns of an expert's unwillingness or inability to serve and waits several months to seek substitute, substitution will not be permitted because of this lack of diligence); *Taylor v. Dean,* No. 5:05–CV–397–OC–10GRJ, 2007 WL 7622152, at *4 (M.D.Fla. Jan. 19, 2007) ("[W]here a party attempts to substitute testimony from a new expert 'as makeup for initially inadequate or incomplete preparation' it does not constitute 'good cause' under Rule 16 for violating the deadlines in the Court's scheduling order."); *Timmons v. Purdue Pharma Co.,* No. 8:04–CV–1479–T–26MAP, 2006 WL 6866590, at *1 (M.D.Fla. Jan. 24, 2006) (denying motion to substitute expert witness where counsel knew the original expert would be unavailable for trial but waited several months to file the motion to substitute); *LNC Investments, Inc. v. First Fid. Bank,* No. 92 CIV. 7584(CSH), 2000 WL 1290615, at *4 (S.D.N.Y. Sept. 12, 2000) (a party's lack of diligence in ensuring the availability of its own expert was no reason to grant a motion to substitute experts).

■ Here, the reason for Dr. Wilkerson's refusal to testify was entirely pre-ventable. Quite simply, Plaintiff did not prepare her expert to present an admissible expert medical opinion. She provided him with only fifty-eight (58) pages of medical records—which included no radiological films—despite the fact that the discovery process produced more than 1,000 pages of medical records. Plaintiff also declined to have her medical expert personally examine her—even though her expert testified that personal examination was the primary method through which he could form a reliable medical opinion. Plaintiff's counsel argues that her client's health prevented her from travelling to Dr. Wilkerson's office; however, counsel offers no excuse why Dr. Wilkerson could not travel to the Plaintiff to conduct the examination.[4] Based on counsel's failure to prepare her expert witness, it was entirely foreseeable that he would perform poorly under cross-examination and would ultimately be a detriment to Plaintiff's case.

Furthermore, Dr. Wilkerson's deposition was taken on February 8, 2016. (D.E.93–4.) As of that date, Plaintiff's counsel knew that her expert was not only unreliable, but that his opinion would almost certainly be excluded given his own admission that he could offer no reliable medical opinion. Nevertheless, counsel waited an additional two months to seek substitution of her expert. In that time, Defendant filed a Motion to Exclude Dr. Wilkerson and a Motion for Summary Judgment. Plaintiff does not explain why she waited two months to attempt to resolve this issue. Plaintiff also provides no evidence that another medical expert, after reviewing the medical records in this case, will offer an opinion which supports Plaintiff's theory of causation.[5]

---

4. Plaintiff also offers no excuse for why she did not previously cross-designate her treating physicians as fact witnesses and/or expert witnesses.

5. Plaintiff suggests that her treating physician could testify as an expert. However, this feeble proffer does nothing to demonstrate that substitution would be meaningful, because there is no evidence that her treating physician agrees with her theory of causation.

The Court finds that the Plaintiff's failure to provide her expert with adequate medical records, her inability to be examined by her expert and her failure to adequately prepare her expert for his deposition,[6] do not constitute good cause for a modification of the scheduling order. Additionally, Plaintiff cannot demonstrate good cause for why she waited from February 8, 2016 to April 11, 2016, to seek substitution when she knew Dr. Wilkerson was not a viable medical expert on February 8th. For all these reasons, the Court finds that Plaintiff failed to exercise diligence in preparing her original expert or in seeking to substitute a new expert. Because her pending request to modify the scheduling order is based solely on her own lack of diligence, Plaintiff's Motion to Substitute her expert witness must be denied. Finally, the Court finds that even if good cause existed for a modification of the scheduling order, the Plaintiff has not demonstrated excusable neglect.[7]

### III. Conclusion

Accordingly, it is **ORDERED AND AD-JUDGED** that:

1.  Defendant's Motion to Exclude the Expert Testimony of Dr. John Wilkerson (D.E.93), filed on April 1, 2016, is **DENIED AS MOOT**;[8] and

2.  Plaintiff's Motion to Substitute (D.E. 113) her medical expert witness, filed on April 7, 2015, is **DENIED**.

---

6.  All of these matters were within Plaintiff's control.

7.  In this case, the Defendant would suffer prejudice if the Court were to modify the scheduling order. Plaintiff waited at least two months after her expert proved unviable to seek substitution. In that time, Defendant expended significant resources filing a Motion to Exclude and Motion for Summary Judgment. Additionally, both the parties and the Court have an important interest in the reliability of scheduling order deadlines. Finally,

**DONE AND ORDERED** in Chambers at Miami, Florida this 6th day of May, 2016.

---

as previously noted the ability of the Plaintiff to adequately prepare her original expert and then to timely request substitution after her expert proved unreliable was well within her control.

8.  The decision to deny as moot Defendant's Motion to Exclude (D.E.93) is based upon Plaintiff's representation that Dr. Wilkerson has withdrawn as an expert witness. However, this decision should not be viewed as an opportunity for Plaintiff to revive Dr. Wilkerson as her expert.